UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 2:18 CR 33 PPS/JEM |
| v. | ) | |
| | ) | |
| SAMANTHA ELHASSANI | ) | |

**Government's Statement of Law and Overview
of the Classified Information Procedures Act**

In anticipation of the status hearing scheduled for November 1, 2018,
the United States submits the following statement of law and overview of
anticipated issues related to the Classified Information Procedures Act, Title
18, United States Code, Appendix III ("CIPA").

## I. Introduction

On March 21, 2018, Defendant Samantha Elhassani was indicted for
making false statements to federal agents in violation of Title 18, United States
Code, Section 1001. DE 1.  Defendant made an initial appearance before
Magistrate Judge John Martin on July 25, after she was transported to the
United States from overseas. DE 9.  On August 22, Defendant was charged via
a superseding indictment for conspiring to provide material support to ISIS
and aiding and abetting others in providing material support to ISIS, in
violation of Title 18, United States Code, Section 2339B. DE 23.

The government began investigating Defendant and her co-conspirators several years before the instant charges were filed.  Accordingly, the discovery in this case is voluminous and will involve CIPA motions and hearings.  As explained below, CIPA will ensure that Defendant is provided with all required discovery and receives a fair trial, without any undue and unnecessary disclosures that would adversely impact national security.  This memorandum does not address the specific facts of Defendant's case or how CIPA will apply to specific discovery in this case; rather, it is intended to provide a roadmap of what CIPA proceedings are likely to occur in this matter.

## II.  CIPA General Principles

CIPA does not alter the rules of discovery or evidence. *See* Wilson, Douglas J., *National Security Investigations and Prosecutions* § 25:3 ("[CIPA] does not prescribe rules for the admissibility of classified information or otherwise purport to alter the rules of evidence or criminal procedure.  Nor does it expand or limit the government's discovery obligations. Instead, the statute creates a mechanism designed to protect both classified information and the defendant's right to a fair trial.").  CIPA is not designed to disadvantage the defendant.  *See United States v. Moussaoui*, 382 F.3d 453, 477 (4th Cir. 2004) ("CIPA thus enjoins district courts to seek a solution that neither disadvantages the defendant nor penalizes the government (and the public) for protecting classified information that may be vital to national

2

security."). The statutory and constitutional discovery rights of a defendant charged with a national security crime are no less important and no different than those of any other defendant.  Should this case proceed to trial, it will look much like any other federal criminal trial.

Nevertheless, national security cases involve difficult decisions balancing many interests.  When in doubt, the government favors disclosure; it has and will continue to disclose records even if they are beyond the scope of the charges or are not technically discoverable.  But admittedly, in cases involving national security, a defendant may not receive some materials the government might otherwise tender in a case that lacks national security considerations.  In instances where a disclosure would harm national security, decisions about how to handle such information must face careful scrutiny.

### a.      Classification: The CIPA Prerequisite

The government will not ask the Court to supervise every discovery determination in this case.  The government has already produced more than 400 unclassified discovery files, which amount to more than 5,000 pages of records.   Before the November 1 hearing, the government anticipates producing another substantial sum of unclassified records. Among other things, the government will produce unclassified *Jencks* materials for numerous individuals who may or may not be called as witnesses, more than

a year before the scheduled trial date. None of these determinations will require any Court intervention.

As the title suggests, CIPA only applies to *classified* information. 18 U.S.C.A. App. III § 1. When government counsel obtains classified information that it intends to produce to the defendant, the first step for the government is to determine if it is possible to declassify that material. *See* 28 C.F.R. § 17.17(a) (requiring government attorneys to seek declassification of materials that they must produce in litigation when possible); *see also United States v. O'Hara*, 301 F.3d 563, 568 (7th Cir. 2002) (noting the government's successful efforts to obtain declassification after a Court's ruling on a discovery issue). When declassification is not an option, there is simply no way around the strictures of CIPA.

### b. Classification and Cleared Counsel

In order to view classified material without violating applicable laws and regulations, an individual must obtain a security clearance <u>and</u> have a need to know. *See, e.g.*, *United States v. Amawi*, 2009 WL 961143 (N.D. Ohio), citing Exec. Order No. 13292, Section 6.1(z), 68 Fed.Reg. 15315, 15322 (Mar. 28, 2003); *Badrawi v. Dep't of Homeland Security*, 2009 WL 103361, *9 (D.Conn.) (counsel without need to know properly denied access to classified information despite security clearance). Article III Judges are automatically entitled to access classified information necessary to resolve issues before them. Pub. Law

No. 96-456, 94 Stat. 2005, Appendix B (Security Procedures). Judicial clerks and other court personnel must undergo additional background checks prior to receiving classified information.[1] *See*, *United States v. Smith*, 899 F.2d 564, 568-69 (6th Cir. 1990) ("We therefore hold that the Executive Branch may conduct reasonable background investigations, subject to district court review, of judicial personnel before such personnel are cleared to work on a case involving classified information.")

As in all cases, the Court has the final word on constitutional and statutory discovery matters. However, such decisions are not made in a vacuum or without the input and expertise of those entrusted with keeping our nation and our nation's secrets safe. Courts should defer to the Executive's classification determinations. *See, e.g. United States v. Amawi*, 531 F. Supp. 2d 832, 839 (N.D. Ohio 2008) (district judge stating, "And, to the extent that I might question whether disclosure of other, apparently less sensitive but still classified information would create any real risk to national security, I should be very cautious about substituting my judgment for that of those who know

---

[1]     A Classified Information Security Officer ("CISO") is necessary to advise the Court and address the handling and storage of classified material. Counsel ensured that a CISO was aware of the litigation and made contact with the Court. To avoid any appearance that the government is attempting to influence the Court through communications with the CISO, counsel has limited interaction with the CISO to discussing logistical matters and seeking clarification on the expected timing for the granting of necessary security clearances. Formal appointment of one or more qualified individuals as the Court's CISO should follow the status hearing.

more than I, and whose job it is to know better than I, just what those risks might be."), *citing United States v. Yunis,* 867 F.2d 617, 623 (D.C.Cir.1989); *See also United States v. Abu Marzook*, 412 F. Supp. 2d 913, 921 (N.D. Ill. 2006) (recognizing that the 4th Circuit held "a court cannot question the Executive's designation of material as classified.")[2] *citing United States v. Smith,* 750 F.2d 1215, 1217 (4th Cir.1984).

When classified information is made available in discovery, the rights of defense counsel to inspect such material is limited by the security clearance requirement and the court may order defense counsel to seek a clearance. *United States v. Hashm*i, 621 F.Supp. 2d 76 (S.D.N.Y. 2008); *United States v. Bin Laden*, 58 F.Supp.2d 113, 117-23 (S.D.N.Y. 1999).   Defense counsel, however, may refuse to seek a clearance.  *United States v. Oakley*, 2007 WL 4118298 (E.D. Tenn. 2007).  In such cases, the court may appoint stand-by counsel who can and will obtain a security clearance.  The Court may also appoint cleared counsel for limited portions of the case.  *Id*.; *see also United States v. Abu Ali*, 528 F.3d 210, 249 (4th Cir. 2008).  The need-to-know requirement applies to cleared defense counsel.  *United States v. Zazi*, 2011 WL 2532903 (E.D.N.Y. June 24, 2011).

---

[2]     The *Abu Marzook* Opinion further noted that "Although the Seventh Circuit has not addressed this precise issue in the context of CIPA, it has provided some guidance in the context of the Freedom of Information Act." *Abu Marzook*, 412 F. Supp. 2d at 921.

Courts have noted the desire to protect classified information from defense counsel, including those with clearances, is not centered on any distrust of counsel as officers of the court; it is simply a recognition of the sensitive and classified nature of certain documents. *United States v. Daoud*,[3] 755 F.3d 479, 484 (7th Cir.), *supplemented*, 761 F.3d 678 (7th Cir. 2014) ("Though it is certainly highly unlikely that Daoud's lawyers would, Snowden-like, publicize classified information in violation of federal law, they might in their zeal to defend their client, to whom they owe a duty of candid communication, or misremembering what is classified and what not, inadvertently say things that would provide clues to classified material.").

## III. CIPA Section 2

Once it is sufficiently clear that the matter will involve classified information, the Court should schedule a CIPA Section 2 hearing to "establish the timing of requests for discovery, the provision of notice required by Section 5 of [CIPA], and the initiation of the procedure established by Section 6 of [CIPA]." 18 U.S.C. App. III § 2.  At a Section 2 conference, the Court may also consider other issues "relating to classified information that may arise in connection with the prosecution." *Id.*

---

[3]    While it is important to note that *Daoud* was addressing relevant portions of the Foreign Intelligence Surveillance Act, the observations are equally applicable in the instant context.

7

When setting timelines for hearings and deadlines for filings, the Court may want the government to address in more specific terms how it intends to utilize the various protections CIPA provides. Depending upon the level of detail necessary to answer these questions from the Court, an *ex parte* hearing may be necessary.

Defense counsel has indicated they would object to any *ex parte* hearing that is not explicitly called for in CIPA. DE 46, Tr. at p. 16. The Court need not decide whether an *ex parte* hearing is necessary at the November 1 hearing. Nevertheless, some context about why an *ex parte* hearing may be necessary will assist the Court in making those future determinations.

CIPA is meant to protect classified information from unnecessary disclosure. If classified information were disclosed to defense counsel or other non-cleared persons during a Section 2 CIPA proceeding, it would render the Act useless and frustrate its core goals. When a detailed discussion of classified information, including the types of information that the government may seek to protect through CIPA, is anticipated or necessary, the government will request to proceed *ex parte*.

An *ex parte* hearing to consider discovery issues is not unique to cases involving CIPA. *See* Fed. R. Crim. P. 16(d)(1) (permitting *ex parte* judicial review of a party's showing of good cause to "deny, restrict, or defer discovery or inspection, or grant other appropriate relief"). The use of *ex parte*

proceedings in the context of CIPA is not limited to the government. If defense counsel wishes to present its theory of the case or defense strategy in an *ex parte* proceeding, the government would have no objection. This would allow the Court to fully understand the defense's perspective of the case before making decisions that impact both parties under CIPA. *See, e.g.*, *United States v. Turner*, No. 13 CR 572-2, 2014 WL 3905873, at *3 (N.D. Ill. July 29, 2014) (noting, in the context of CIPA Section 4 that, while seemingly awkward, an *ex parte* submission by defense counsel can allow the Court to stand "in the shoes of defense counsel" while considering the government's submission).

The government is hopeful that the parties and the Court are able to set deadlines without an *ex parte* hearing. So far in this case, government and defense counsel have addressed several matters in a collaborative fashion. Government counsel will discuss CIPA scheduling with the defense counsel and attempt to agree on realistic timelines prior to any Section 2 hearing. However, if such an agreement is not possible, the government may seek to inform the Court *ex parte* regarding any anticipated CIPA issues and the reasons for any delay. The government will only resort to this procedure if it is necessary to protect national security information that has a bearing on the issues the Court would decide at a CIPA Section 2 hearing.

## IV.  CIPA Section 3

CIPA Section 3 mandates the issuance of "an order to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case" upon request by the government.  18 U.S.C. App. III § 3.  The key Senate Report on CIPA, issued by the Senate Committee on the Judiciary, provides that the terms of a protective order may include, but need not be limited to, provisions:

> (1) prohibiting the disclosure of the information except as authorized by the court; (2) requiring storage of material in a manner appropriate for the level of classification assigned to the documents to be disclosed: (3) requiring controlled access to the material during normal business hours and at other times upon reasonable notice; (4) requiring the maintenance of logs recording access by all persons authorized by the court to have access to the classified information in connection with the preparation of the defense; (5) requiring the making and handling of notes taken from material containing classified information; and (6) authorizing the assignment of government security personnel and the provision of government storage facilities.

S. Rep. No. 96-823 at 6, reprinted in 1980 U.S.C.C.A.N. 4294, 4299.

A protective order is already in place in this matter. DE 45. As more sensitive discovery is tendered, including the possibility of classified or declassified material, the government may request additional terms in the protective order. The parties have successfully negotiated a suitable protective order, and the government will continue to collaborate with defense counsel if the need for an amended protective order arises.

## V.  CIPA Section 4

The government anticipates that it will file a motion pursuant to CIPA Section 4.  Section 4 applies when and if it is necessary "to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove." 18 U.S.C.A. § App. III § 4.  That is, the government may seek to delete information from discovery, or substitute its form, such as providing a written summary of facts.  This can help protect the original source of the information in a manner that avoids harm to national security without prejudicing the defendant.  Since CIPA Section 4 often applies to pre-trial discovery, the Court will likely see this section before other substantive CIPA procedures.  Nevertheless, CIPA Section 4 is not limited solely to pretrial discovery, but includes discovery during trial.  *United States v. O'Hara*, 301 F.3d 563 (7th Cir. 2002).

The district court in *United States v. Turner* noted, "The Seventh Circuit has not explicitly addressed what standard a district court should apply in analyzing government requests for protective orders under CIPA Section 4." No. 13 CR 572-2, 2014 WL 3905873, at *2 (N.D. Ill. July 29, 2014), citing *United States v. Hanjuan Jin,* 791 F.Supp.2d 612, 618 (N.D. Ill. June 14, 2011). The

judge in *Turner* recognized the "widespread agreement among the other circuits on a four-part test for resolving CIPA discovery motions:

> [1] When considering a motion to withhold classified, information from discovery, a district court must first determine whether, pursuant to the Federal Rules of Criminal Procedure, statute, or the common law, the information at issue is discoverable at all.
>
> [2] If the material at issue is discoverable, the court must next determine whether the government has made a formal claim of the state secrets privilege lodged by the head of the department[4] which has actual control over the matter, after actual personal-consideration by that officer.
>
> [3] Once a court concludes that the material is discoverable and that the state secrets privilege applies, then the court must determine whether the evidence is relevant and helpful to the defense of on accused.
>
> [4] If the information meets the relevant and helpful test, CIPA § 4 empowers courts to determine the terms of discovery, if any."[5]

*Id.*, *citing United States v. Sedaghaty,* 723 F.3d 885, 904 (9th Cir.2013)

(internal Citations and quotations omitted) (paragraph breaks added) and *Jin,*

---

[4]   The government does not concede that it is required to formally invoke, or meet the requirements of, the state secrets privilege and will address this requirement further in any CIPA Section 4 briefing. *But see, United States v. Aref*, 533 F.3d 72, 79 (2d Cir. 2008) ("We are not unaware that the House of Representatives Select Committee on Intelligence stated categorically in its report on CIPA that 'the common law state secrets privilege is not applicable in the criminal arena.' H.R. Rep. 96-831, pt. 1, at 15 n. 12. That statement simply sweeps too broadly.").

[5]   Court have also employed a balancing test as a final step. *See, e.g.*, *Jin*, 791 F. Supp. 2d at 619–20. ("Several circuits have also recognized or endorsed a final step in determining whether classified information must be disclosed to a defendant: the balancing of the Government's interest in nondisclosure against the defendant's need for the information.").

791 F.Supp.2d at 619 (collecting cases); *see also*, *United States v. Al-Jayab*, 16 CR 181, p. 7 (N.D. Ill. June 28, 2018) (unpublished opinion attached hereto).

Section 4 envisions that the government may make its request in a written statement inspected "by the court alone." 18 U.S.C.A. § App. III § 4. Proceeding *ex parte* is often necessary to protect classified information and the very purpose of CIPA. *See, United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008) ("When the 'government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules.'") *quoting* H.R. Rep. 96-831, pt. 1, at 27 n. 22; *See also*, *United States v. Abu-Jihaad*, 630 F.3d 102, 143 (2d Cir. 2010).

CIPA Section 4 does not create any new rights or limit the Government's discovery obligations under traditional rules of criminal discovery (*i.e., Brady, Giglio,* Jencks Act, and Rule 16). Instead, courts apply the "relevant and helpful" standard to classified information to determine whether such information can be "deleted" or must be produced to the defense in an alternative, unclassified format. A substitution must "provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." *United States v. Sedaghaty*, 728 F.3d 885, 892 (9th Cir. 2013), *quoting* CIPA; *United States v. Dumeisi*, 424 F.3d 566, 578

(7th Cir. 2005); *see also* 18 U.S.C. App. III, § 6.[6]  The substitution must not "materially disadvantage a defendant." *Moussaoui*, 382 F.3d at 453.  The substitution should also be neutrally worded so not to "unfairly color the presentation of the information" and should not be "shaded to the government's advantage." *Sedaghaty*, 728 F.3d at 906.  It must include all necessary facts and crucial context.  *Id.*; *see also United States v. Fernandez*, 913 F.2d 148, 154 (4th Cir. 1990) (stating national security interests cannot "override the defendant's right to a fair trial").  The substitution need not summarize the entire document but rather must "fairly state[ ] the relevant elements of the classified documents." *United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998).

Courts invariably need to review the underlying documents when determining whether deletion or substitution is appropriate. *See, e.g. United States v. Libby*, 429 F.Supp.2d 18 D.D.C (2006), *opinion amended on reconsideration*, 429 F.Supp.2d 46 (D.D.C.).  After receiving the government's *ex parte* submissions and considering the proposed deletions or substitutions, the Court may take any number of actions, such as allowing a partial redaction or even a complete deletion when it finds noting relevant *and* helpful to the defense. *See, e.g.*, *Jin*, 791 F. Supp. 2d at 622 (N.D. Ill. 2011) ("While the email

---

[6] As discussed below, CIPA Section 6 allows substitutions in much the same fashion, with similar analysis, at a later stage in the proceedings.

might pass the low threshold of relevance, the government does not believe it would be helpful to the defense.").

## VI.  CIPA Section 5

Depending on the outcome of the Section 4 proceedings, Sections 5 through 8 may not apply to this case. Nevertheless, a brief review of those sections is included here should the need arise.

CIPA anticipates situations where the government may need to provide a defendant with classified information. This can either come after the government decides there is no adequate remedy under CIPA Section 4 that would prevent the disclosure of classified information, or after the Court rejects the government's proposed deletion, substitution or written statement.  If the defense becomes in possession of classified information, it does not mean that that the information loses its classification and that it can be disclosed at trial without further process. CIPA Section 5(a) requires defense counsel to notify the government of the precise classified information they reasonably expect to disclose or to cause the disclosure of "in any manner in connection with any trial or pretrial proceeding." 18 U.S.C. App. III, § 6 *See also, e.g., United States v. Wilson*, 750 F.2d 7, 9 (2d Cir. 1984); *United States v. Collins*, 720 F.2d 1195, 1199-1200 (11th Cir. 1983) (finding notice insufficient and noting that it "constitute[d] 'greymail' albeit written instead of hinted.").

## VII. CIPA Section 6

Section 6 guarantees the government an opportunity to evaluate the costs and benefits with respect to the potential use of classified disclosures at trial. Instead of guessing what classified information *might* get disclosed at trial, CIPA Section 6 provides a degree of certainly concerning what a trial will entail.

When the government moves under CIPA Section 6(a),[7] a Court must "determine the use, relevance, and admissibility of classified information that would otherwise be made during the trial or pretrial proceeding." 18 U.S.C. App. III § 6(a). At the Section 6(a) hearing, the Court hears the defense proffer and the arguments of counsel, then rules whether the classified information identified by the defense is relevant under Rule 401 of the Federal Rules of Evidence. *See generally, Yunis*, 867 F.2d at 622. The Court must also analyze other grounds for admissibility, such as determining whether the evidence is cumulative, "prejudicial, confusing, or misleading," so that it should be excluded under Rule 403 of the Federal Rules of Evidence. *See Wilson*, 750 F.2d at 9. At the conclusion of the Section 6(a) hearing, the Court must state in writing the reasons for its determination as to each item of classified information.

---

[7]     The government may also submit an affidavit of the Attorney General *ex parte* certifying that the disclosure would harm national security and explaining the basis for the classification of such evidence. 18 U.S.C. App. III § 6(c)(2).

Following the Section 6(a) hearing and formal findings of admissibility by the Court, the government may move to substitute an admission of relevant facts or summaries for classified information that the Court rules is admissible, much in the same way the government is permitted to delete or substitute items in discovery under CIPA Section 4. *Compare* 18 U.S.C. App. III § 6(c)(1)(A) (allowing "the substitution for such classified information of a statement admitting" what the classified information "would tend to prove.") *with* 18 U.S.C. App. III § 4 (allowing a substitution in discovery consisting of a statement "admitting material facts"). The Court must grant the motion for substitution "if it finds that the statement or summary will provide the defendant with substantially the same ability to make [her] defense as would disclosure of the specific classified information." 18 U.S.C. App. III § 6(c)(1).

If the Court determines that the item of classified information at issue is relevant and admissible and denies the government's motion for substitution, Section 6(e)(1) of CIPA permits the government to object to the classified information's disclosure. 18 U.S.C. App. III § 6(e)(1). In such cases, the Court "shall order that the defendant not disclose or cause the disclosure of such information." *Id.* Section 6(e) then sets forth a sliding scale of remedies that the Court may impose in such a case, up to and including dismissal of one or more counts. *Id.* at § 6(e).

In short, CIPA Section 6 provides the Court an opportunity to tell the parties what classified information the trial will divulge.  During a Section 6(e) hearing, evidentiary rulings relating to classified information are made in advance of trial.  If the government persists against the disclosure of classified information at trial in the face of adverse evidentiary rulings, the Court must inform the parties of the consequence to the government for doing so.

## VIII. Section 7

The United States may take an interlocutory appeal of any order authorizing disclosure of classified information, imposing sanctions for nondisclosure of classified information, or refusing to issue a protective order. The nature of the appeal is limited to classified evidentiary issues and not other errors.  18 U.S.C. App. III § 7; *United States v. Rosen,* 557 F.3d 192, 198 (4th Cir. 2009).  If the government appeals pursuant to CIPA Section 7 prior to trial, the trial shall not commence until the appeal has been resolved.  *Id* at § 7(b).  If an appeal is taken during trial, the trial is adjourned until the appeal is resolved.  *Id*.  This further ensures that the government is given an opportunity to obtain a final determination of what classified information it must disclose.

## IX. Section 8

At present, the government does not believe the trial of this matter will involve the disclosure of classified information. CIPA Section 8 allows parties to stop proceedings to ensure that no classified information will be disclosed and allows the government to object to defense counsel's inquiries into areas of classified information. 18 U.S.C. App. III § 8.  It also allows the Court to admit only part of a document, unless in fairness "the whole ought [to] be considered." *Id.*, at § 8(b). Since the admission of classified information into evidence does not change the nature of its classification (*Id.*, at § 8(a)), the government will work with the CISO to address logistical and security issues should the disclosure of classified information through testimony or exhibits at trial appear likely.  Additional briefing on this matter may be necessary should the Defendant file a notice under CIPA Section 5 detailing classified information that she intends to disclose at trial.

## X.  Conclusion

To summarize, in the next sixty days, the government will attempt to reach agreements with defense counsel concerning the nature and timing of discovery and CIPA filings.  If an agreement is not forthcoming, the parties will notify the Court.  The government will then request a CIPA Section 2 hearing or agreed ruling on scheduling matters, including the timing of a CIPA

19

Section 4 filing and likely subsequent hearing. Should the government tender

classified discovery in this matter, Defendant must file a CIPA Section 5 notice

outlining what, if any, classified information she intends to disclose or cause

the disclosure of at trial.  Depending on the results of a CIPA Section 4 hearing

and any CIPA Section 5 notice provided by the Defendant, the government my

utilize CIPA Section 6 to determine the nature of any classified information it

must disclose or allow the disclosure of at trial.

Respectfully submitted this 26th day of October, 2018.


THOMAS L. KIRSCH, II
United States Attorney

/s/Joshua P. Kolar

_____
Joshua P. Kolar
Abizer Zanzi
Assistant United States Attorneys

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 26, 2018, I caused a copy of the foregoing to be served by electronic filing on the defendant's attorneys of record:

Thomas A. Durkin
Joshua G. Herman

/s/Joshua P. Kolar
_____

JOSHUA P. KOLAR
Assistant United States Attorney
5400 Federal Plaza, Suite 1500
Hammond, IN 46320