IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18 CR 33 |
| | ) | Judge Philip P. Simon |
| SAMANTHA ELHASSANI, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S EMERGENCY MOTION FOR PRE-TRIAL
RELEASE ON CONDITIONS, AND REQUEST FOR A HEARING**

Defendant, **SAMANTHA ELHASSANI**, by and through her attorneys, **THOMAS ANTHONY DURKIN and JOSHUA G. HERMAN,** pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3142, *et seq*., as well as the Due Process, Effective Assistance of Counsel, and Excessive Bail clauses of the Fifth, Sixth and Eight Amendments to the Constitution of the United States, respectfully moves this Court for its Order permitting pre-trial release on conditions as Defendant can now rebut the statutory presumption that she is a flight risk and a danger to the community; and, insofar as the emergency nature of this motion is concerned, she is desperately in the need of mental health treatment which she has not received and cannot be afforded in the custody of the U.S. Marshal. This motion is filed on an emergency basis with a request for a hearing pursuant to 18 U.S.C. § 3142(f) as soon as practicable.[1]

In support of this motion, Defendant, through counsel, shows to the Court the following:

1. For two horrific years Defendant was held hostage in ISIS-controlled Raqqa,

---

[1] At the November 1, 2018 status conference, undersigned counsel indicated to the Court the possibility of this Motion. While counsel do not have a transcript of that proceeding, our notes and recollection reflect that there was a very brief discussion concerning whether the Motion should be presented to the

Syria, where she endured and survived constant violence, warfare, torture, and physical and sexual abuse. After intense bombardment by Syrian Defense Forces (SDF) and other military groups backed and supported by the United States, Defendant was somehow able to escape certain death in Raqqa with her own four children and three other minors in her care. It is not too much to say that those seven children owe their lives to Defendant and her arduous but successful escape from Raqqa. Defendant finally felt some sense of relief and security when she encountered Kurdish People's Protection Units known as the YPG and an associated group called the YPJ. But this, too, was short-lived as she was soon transferred to two Syrian prison camps run by the Syrian Democratic Forces (SDF).[2]

      2.      Through some apparent arrangement with local foreign military forces, the FBI interviewed Defendant multiple times in late November 2017 while she was detained in the Syrian camps. During those interviews, Defendant repeatedly expressed her desire to return to the United States. The FBI finally obliged those requests, but not until late July 2018 when, pursuant to an arrest warrant issued upon the return of a sealed indictment in this district (Dkt. #10), it placed Defendant and her four children on a military cargo transport plane that landed in Gary, Indiana. Defendant was immediately separated from her children and then taken before

---

[2] The YPG is a Kurdish militia force that operates in Syria and is a part of the SDF. The YPJ is also a Kurdish group comprised mainly of women that fights alongside the YPG. The United States has provided military, logistical, and other support to these groups during the Syrian War. *See*, *e.g.*, Tom Perry, Orhan Coskun, U.S.-led coalition helps to build new Syrian force, angering Turkey, Jan. 14, 2018, available at: https://reut.rs/2ETyUmB (last visited Dec. 13, 2018); People's Protection Units, Wikipedia, https://bit.ly/2DITZjY (last visited Dec 13, 2018).

Magistrate Judge Martin.³

3. Defendant made her initial appearance on July 25, 2018, and was later found to be eligible for appointed counsel. (Dkt. #9). That appearance was made without counsel. (*Id*.). Defendant was before the Court again on July 25, 2018, and was found to be eligible for appointed counsel. (Dkt. #14). Undersigned counsel was then appointed to represent Defendant under the CJA on July 25, 2018. (Dkt. #14). An order of detention was also issued without objection. (Dkt. #15). Pursuant to that order, after counsel informed the Court that he was not ready to propose release conditions, Defendant was detained without prejudice and remains so to this day at the Porter County Jail. Counsel for Defendant specifically reserved the right to a subsequent release hearing upon giving advance notice to the government, which they gave to the AUSAs in a telephone call on December 3, 2018 after meeting with Defendant.

4. This case is one of first impression in this District. It is also one of a very few, if any, cases prosecuted nationally under the government's national security policy of detaining and charging an American citizen who was at one time in ISIS-controlled territory in Syria. It is

---

³ The indictment in this case was returned on March 21, 2018, and charged Defendant with making a false statement to the FBI on March 19, 2015, in violation of 18 U.S.C. § 1001. (Dkt. #1). Upon the return of the indictment, the government moved to seal the case until Defendant's arrest. (Dkt. #2). That request was granted and the matter was sealed. (Dkt. #3). On July 24, 2018, the government moved to unseal the matter and entire court file, with specified exceptions for matters that remained under seal. (Dkt. #7). The government requested that its Motion for the Case to Remain Under Seal Pending Arrest and to Allow the Government to Share Indictment and Arrest Warrant with Necessary Third Parties remain under seal. Those pleadings, filed on March 23, 2018, do not appear on the docket. On August 22, 2018, a superseding indictment was returned by the grand jury. (Dkt. #23). The superseding indictment charges Defendant with Conspiracy to Provide Material Support to ISIS, from Fall 2014 through Summer 2015, in violation of 18 U.S.C. §2339B(a)(1) (Count One) and Aiding and Abetting two individuals in Providing Material Support to ISIS, from March 23, 2015 through April 7, 2015, in violation of 18 U.S.C. §2, §2339B.

certainly the only case undersigned counsel are aware of that charges a non-Muslim, non-ISIS member fighter for having gone to Syria with her husband and children. This prosecution, therefore, necessarily raises numerous political and constitutional questions that are beyond the scope of this motion, but will become evident as the case progresses. More germane to this motion insofar as the strength of the government's evidence is concerned, is that this is hardly the typical material support for terrorism case. In fact, this case can readily be seen to be a case about Defendant's Muslim husband and his brother, both of whom became ISIS fighters in Syria. Defendant, who is neither Muslim, nor a supporter of ISIS or any other terrorist organization, was compelled, both psychologically and physically, to follow her husband's and his brother's absurd ideas.

5. Defendant's lack of radicalization and/or present danger to the community cannot realistically be disputed by the government and is so far confirmed by all the discovery. This, too, has been confirmed by a nationally known and highly respected forensic psychiatrist who has been appointed by the Court. At counsel's direction, Defendant was assessed on August 28, 2018, by Dr. Stephen N. Xenakis, M.D., of Arlington, Virginia, a psychiatrist and retired Brigadier General of the United States Army, who has extensive experience in conducting forensic psychiatric analysis of persons accused of terrorism. Dr. Xenakis has also provided a letter based on his meeting with Defendant as well as his understanding of her current medications and status. A copy of that letter will be submitted under seal as Exhibit A. As is evident in the letter presented by Dr. Xenakis, which could be supplemented by his live testimony should the Court so require at a hearing, it is his professional opinion that Defendant is in need of treatment for ongoing mental health issues that have resulted from the severe trauma

that she suffered at the hands of her husband and the crazy ordeal that he put her and her children through.  It is further evident that Defendant is unable to receive this treatment at the Porter County Jail and that her condition has continued to deteriorate, causing undersigned counsel great concern.

6.      In light of this brief background, and as will be further elucidated at an evidentiary hearing and supplemented with further briefing as necessary, Defendant can surely be said to be able to rebut the statutory presumption that she is a flight risk and a danger to the community.  As this Court is aware, under 18 U.S.C. § 3142(e), a person may only be detained before trial if it is found that no condition or combination of conditions of an indicted defendant "will reasonably assure the appearance of the [defendant] ... and the safety of any other person and the community."  Counsel further appreciates that the material support charges brought under §2339B create a rebuttable presumption for detention pursuant to §3142(e)(3)(C).  That presumption is, however, only categorical and not individual.  It is also rebuttable, not mandatory.  Thus, the statute clearly permits release even for individuals charged under the terrorism statutes.[4]  The overriding question remains whether there are conditions or combinations of conditions that will reasonably assure the appearance of Defendant as required and the safety of any other person and the community.  18 U.S.C. § 3142(c).

7.      Importantly, a defendant rebuts the statutory presumption by meeting a "burden of production," which involves coming forward "with some evidence that he will not flee or endanger the community if released."  *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir.

---

[4] While counsel concede that few Defendants charged in material support cases are released pre-trial, this is *not* a material support case insofar as Defendant is concerned.  Instead, it is more accurately described as a proxy terrorism case against her dead husband.

1986). In *Dominguez*, the Seventh Circuit clearly held how the "burden of production is not a heavy one to meet." *Id*. Additionally, the burden of persuasion ultimately remains with the government. *Id*. Further, the facts that the Court uses to support a finding of detention, in that no condition or combination of conditions will reasonably assure the safety of another person or the community "shall be supported by clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B).

8. As will be further adduced at the hearing, and is only offered by brief proffer here, Defendant cannot be said to be a flight risk. Indeed, in the Fall of 2017, Defendant escaped from ISIS-held territory with seven minors in her charge and into the control of the YPG and SDF. Efforts were underway for her to return to the United States, and she likely would have done so prior to the FBI interceding, and also if she had the means and would not have faced certain death (and the likely death or loss of her children) if caught. Additionally, there is no persuasive evidence that Defendant poses a danger to the community. Moreover, as the government knows full well—and which can be set forth in further detail to the Court, *in camera* if necessary—Defendant has a long history of being compliant and cooperative with the FBI.

9. But most importantly, release on strict conditions should be afforded to avoid the real risk of further ongoing deterioration of her mental health while she remains in custody without access to any meaningful mental health care. Defendant's ongoing detention and lack of meaningful treatment runs counter to every diagnostic and professional standard for survivors of abuse, much less the torture and trauma that Defendant endured and which continues to torment her. Such ongoing confinement can only be described as cruel and unnecessary when there are meaningful alternatives that may be available.

WHEREFORE, for the foregoing reasons, and as can be supplement at a hearing or through further pleadings, Defendant respectfully requests that the Court order her pre-trial release on conditions, and further requests a hearing pursuant to the provisions set forth in 18 U.S.C. § 3142, *et seq*.

Respectfully submitted,

/s/Thomas Anthony Durkin
**THOMAS ANTHONY DURKIN,**
Attorney for Defendant.

/s/Joshua G. Herman
**JOSHUA G. HERMAN**,
*Attorneys for the Defendant*.

**THE RERUM NOVARUM HUMAN AND**
**CIVIL RIGHTS CENTER OF CHICAGO**
**DURKIN & ROBERTS**
2446 North Clark
Chicago, Illinois 60614
(312) 913-9300
tdurkin@durkinroberts.com

**LAW OFFICE OF JOSHUA G. HERMAN**
53 W. Jackson, Blvd., Suite 1650
Chicago, IL 60604
Tel: (312) 909-0434
jherman@joshhermanlaw.com

## CERTIFICATE OF SERVICE

Thomas Anthony Durkin, Attorney at Law, hereby certifies that the foregoing Defendant's Emergency Motion for Pre-Trial Release on Conditions, and Request for a Hearing, was served on December 14, 2018, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/ Thomas Anthony Durkin
**THOMAS ANTHONY DURKIN,**
2446 N. Clark Street
Chicago, IL 60614
(312) 913-9300
tdurkin@durkinroberts.com