UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:18CR33-PPS/JEM |
| | ) | |
| SAMANTHA ELHASSANI, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

At her original arraignment and detention hearing on July 25, 2018, Samantha Elhassani stipulated to pretrial detention, reserving the right to later petition the court for release "should circumstances change." [DE 14.] On December 14, 2018, Elhassani filed an "Emergency Motion for Pre-Trial Release on Conditions, and Request for a Hearing." [DE 49.] The government was ordered to file an expedited response, which it did on December 19 [DE 53], and a hearing was held on December 20. After consideration of the applicable law, the evidence and the proffers of the parties, I announced on the record at the hearing my decision to deny Elhassani's motion for release, with a written order to follow. This is that written order.

The superseding indictment charges Elhassani with two violations of 18 U.S.C. §2339B, which prohibits "knowingly provid[ing] material support or resources to a foreign terrorist organization, or attempt[ing] or conspir[ing] to do so." Count 1, a conspiracy charge, alleges that beginning as early as the fall of 2014 and continuing

through the summer of 2015, Elhassani conspired with others, including "Individual A and Individual B" to provide "personnel, including funds and tactical gear for such personnel to use, among other things, to work under the direction and control of the Islamic State of Iraq and al-Sham (ISIS)." [DE 23 at 1.]  Count 2 alleges that Elhassani aided and abetted Individuals A and B "in providing themselves as personnel to ISIS, including by procuring tactical gear and funds for their use in fighting for ISIS." [DE 23 at 2.]  These offenses are "Federal crimes of terrorism" as that term is defined in 18 U.S.C. §2332b(g)(5)(B), and carry a maximum term of imprisonment of 20 years under §2339B(a)(1).

The Bail Reform Act, 18 U.S.C. §3142, reflects the Supreme Court's observation that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).  Subsections (a) and (b) of the Act generally require that "a person charged with an offense shall be released on personal recognizance or upon execution of an unsecured appearance bond unless further conditions are necessary to reasonably assure attendance at trial and the safety of the community." *United States v. Salkicevic,* 2015 WL 525556 at *1 (N.D.Ill. Feb. 10, 2015) (Cole, M.J.).  In making such a decision, "the court engages in a two-step analysis:  first, the judicial officer determines whether one of ten conditions exists for considering a defendant for pretrial detention; second, after a hearing, the judicial officer determines whether the standard for pretrial detention is

2

met." *United States v. Thomas*, 2011 WL 5386773 at *3 (S.D.Ind. Nov. 7, 2011) (citing *United States v. Friedman,* 837 F.2d 48, 49 (2nd Cir. 1988)).

In Elhassani's case, one of the ten conditions is clearly met. Section 3142(e)(3)(C) creates a rebuttable presumption in favor of pretrial detention if the judicial officer finds that there is probable cause to believe the defendant has committed a Federal crime of terrorism with a maximum term of imprisonment of 10 years or more. Elhassani acknowledges that this presumption is applicable to her. [DE 49 at 1.] I assume without deciding that Elhassani has met her burden of production of coming forward with "some evidence" that she will not flee or endanger the community if released. *Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). Even so, the presumption in favor of detention "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in §3142(g)." *Id*. Despite the presumption, the government retains the burden of persuasion "to show by clear and convincing evidence that the defendant presents a danger to the community, and by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight." *Salkicevic*, 2015 WL 525556 at *2 (citing *United States v. Kandasamy*, 2008 WL 2660610 at 1-2 (E.D.N.Y. 2008)). *See also Salerno*, 481 U.S. at 752; *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985). The government's showing satisfies both of these standards.

Subsection 3142(g) lists factors to be taken into account when considering the availability of conditions to reasonably assure the defendant's appearance as required

3

and the safety of other people. The first is the nature and circumstances of the offense charged. Federal crimes of terrorism are listed in §3142(g)(1), reflecting a congressional recognition of the seriousness of the type of charges that Elhassani faces here. And a facially valid indictment by a properly constituted grand jury "'conclusively determines the existence of probable cause'" to believe that Elhassani perpetrated the offenses alleged. *Kaley v. United States*, 571 U.S. 320, 328 (2014) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117, n.19 (1975)). The §3142(g)(1) factor clearly weighs heavily in favor of Elhassani's detention pending trial.

The second factor under §3142(g)(2) is the weight of the evidence against Elhassani. As I explained on the record, this factor is not one-sided, but a bit of a "mixed bag." The government says that Elhassani has admitted her awareness of her husband's and brother-in-law's radicalization, that she made multiple trips overseas to position assets in anticipation of the family's relocation for the purpose of the men joining ISIS, and that she had a role in the purchase in Hong Kong of rifle scopes and image-stabilizing binoculars for their use in joining ISIS, all of this as the family was planning to go to Turkey, en route to Syria.

In addition to the evidence of extensive international travel by the defendant in advance of the ultimate trip to Syria, the government's proffer also included videotapes of Elhassani's minor son demonstrating his practiced ability to quickly dismantle and reassemble a loaded assault rifle, and showing and explaining the preparation and use of a suicide belt to kill American forces. The government asserts that Elhassani

4

admitted that she filmed the second video and never expressed moral opposition to her son about what he described doing. A third video depicts Elhassani's son voicing ISIS propaganda and posing as an ISIS sniper.

In opposition, Elhassani proffers a defense that the conduct on which the indictment is based was all undertaken at the direction and under the control of her abusive and dominating husband. As compelling as such a defense might prove to be, I note that much of the support for it comes from Elhassani herself, whose credibility is subject to significant challenges based on her inconsistent statements and falsehoods to law enforcement, the media and others. On balance, I find that the weight of the evidence favors the government's request for pretrial detention.

Next, under §3142(g)(3), I consider Elhassani's personal history and characteristics, a category that includes her character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, and community ties. As I noted at the hearing, this factor militates in favor of detention. Despite the basis for her current motion being Elhassani's mental health, she reported to a probation officer in July that she had no history of mental health issues. Defense counsel's representations at the hearing concerning an unfavorable change in the mental health related medications offered to Elhassani in jail were not shown to be relevant to my determinations about danger to the community and flight risk. The same is true of Elhassani's evidence and proffer concerning her need for additional mental health treatment.

5

Elhassani has no residence or other property in the community, in which she has not lived for several years. She demonstrates no community ties. Elhassani has no employment. She is reportedly estranged from her family, and offers only residence in a shelter or an unnamed person's home ("someone in Elkhart that has a spare bedroom") in support of her request for release. Neither of those options is shown to be other than wholly unsuitable.

Even aside from her current incarceration, the recent history of Elhassani's family overseas demonstrates that she has been unable to provide a secure home environment for her children. The videos alone demonstrate that Elhassani's oldest child was put in positions of significant danger on multiple occasions. Elhassani acknowledges that she is unlikely to be permitted contact with her children, who are currently in the care of the state's Department of Child Services and may soon be in the custody of estranged relatives in Oklahoma or, in the case of the oldest child, in the custody of his biological father. So Elhassani's ties with her children do not offer a stabilizing factor that militates against her risk of flight.

As noted above, the government's proffer demonstrates that Elhassani has a history of international travel, which she has allegedly done in a manner designed to avoid suspicion related to terrorist activity. The current whereabouts of Elhassani's passport are not reflected in the record before me. She advised Probation in July that she was not in possession of her passport. [DE 20 at 2.] Defendant's Exhibit 1 reflects that in March 2015 Elhassani reported keeping "multiple passports" that others

6

attempted to ship through the overseas shipping company in which she then worked. These considerations further show that Elhassani is a flight risk.

As for Elhassani's personal character and the potential danger her release would pose, the government has offered evidence in the form a video and an incident report reflecting that, while in custody at the Porter County Jail, Elhassani got into a dispute with another inmate, threw a mug of coffee at her, and engaged in a scuffle. This evidence of Elhassani's volatility and potential for violence weighs against her release under both §3142(g)(3) and )(4). The jail incident suggests that Elhassani's release could endanger the safety of the community on the individual level, while the proffer of evidence of her support for ISIS suggests that her release could endanger public safety writ large. A district court is "entitled to conclude that a person who criminally commits to supporting ISIS clearly and convincingly presents a danger to United States persons and communities in this country, as well as abroad." *United States v. Khusanov*, 731 Fed.Appx. 19, 23 (2nd Cir. 2018).

Having weighed all the factors enumerated in §3142(g), I am firmly persuaded that the statutory presumption has not been overcome, and that the government has met its burden of demonstrating by clear and convincing evidence that Elhassani presents a danger to the community, and by a preponderance of the evidence that she presents a risk of flight. I find that there do not exist conditions for Elhassani's release that could reasonably assure her attendance at trial and the safety of the community.

**ACCORDINGLY:**

Defendant Samantha Elhassani's Request for a Hearing is GRANTED but her Motion for Pre-Trial Release on Conditions is DENIED.  [DE 49.]

**SO ORDERED**.

ENTERED: December 21, 2018.

    /s/ Philip P. Simon
UNITED STATES DISTRICT JUDGE