IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 2:18-cr-00033-PPS-JEM |
| | ) | |
| | ) | |
| | ) | |
| SAMANTHA ELHASSANI, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DEPOSE
WITNESSES IN IRAQ PURSUANT TO RULE 15
OF THE FEDERAL RULES OF CRIMINAL PROCEDURE**

Defendant, **SAMANTHA ELHASSANI**, by and through her attorneys, **THOMAS ANTHONY DURKIN** and **JOSHUA G. HERMAN**, respectfully moves this Court, pursuant to Rule 15 of the Federal Rules of Criminal Procedure, as well as the Due Process, Compulsory Process, and Effective Assistance of Counsel clauses of the Fifth and Sixth Amendments to the Constitution of the United States, for its order permitting the parties to take foreign depositions of three witnesses located Iraq, and allowing that deposition testimony to be admitted at trial.

In support of this motion, Defendant, through counsel, shows to the Court the following:

1.      On March 21, 2018, Defendant was charged in a one-count indictment alleging that she knowingly made false statements to agents of the Federal Bureau of Investigation on or about March 19, 2015, in violation of 18 U.S.C. § 1001. (Dkt. #1). This charge was returned while Defendant was still in a Kurdish refugee/prison camp in Northeast Syria.

2.      After being flown from Syria to the Gary Airport on a military cargo plane, Defendant made her initial appearance in this Court on July 25, 2018. (Dkt. #9). That initial appearance was made without counsel. *Id.* Defendant was before the Court again on July 25,

2018, and was found to be eligible for appointed counsel by Magistrate Judge Martin. (Dkt. #14). Undersigned counsel was then appointed to represent Defendant under the CJA. (Dkt. #14).

3. On August 22, 2018, the government filed a two-count Superseding Indictment (Dkt. #23), charging two counts of 18 U.S.C. § 2339B (Providing material support or resources to designated foreign terrorist organizations).

4. In investigating the government's allegations and potential defenses, defense counsel have located relevant and material witnesses located in Iraq. For the sake of brevity and confidentiality, these witnesses are the two Yazidi women bought by Defendant's deceased husband and ISIS member to become his sex slaves. The government is aware of the existence of these two women and of the filing of this motion. Counsel also believe the Court is aware of the nature of their anticipated testimony.

5. In short, however, counsel proffer to the Court that their testimony would establish the great lengths Defendant went to protect these woman, both while her husband was alive; and, thereafter, as she escaped out of ISIS-controlled Raqqa and environs to Kurdish held regions with the two women, another Yazidi boy, and her own four children. Indeed, a press story from a Kurdish news source from November 18, 2017 reported how a family of eight Yazidis was liberated by the Syrian Democratic Forces. *See Yazidi family liberated during a SDF special operation*, Nov. 18, 2017, Hawar News Agency, available at https://bit.ly/2Zehv7p (last visited Aug. 24, 2019) ("Today, Saturday at 5:30 am, the Syrian Democratic Forces carried out a special operation in the western countryside of Deir ez-Zor. The forces liberated an 8-member of Yezidi family, 5 of them are children and 3 women, from IS mercenaries."). The "family" referenced in the news story was Defendant, the three Yazidis, and her own four young

children. The story even includes images of Defendant along with her children, the Yazidis, and SDF soldiers. Defendant is to the immediate left of the female soldier:





6.      All of this conduct by Defendant—both protecting the Yazidis in Raqqa and then ensuring their escape and safety after the death of her husband—was done at the risk of certain execution had Defendant's caring treatment of these women been discovered by ISIS.[1]  Needless to say, undersigned counsel believe this evidence is critical in establishing Defendant's lack of sympathy with ISIS and its principles; and demonstrates one of the main theories of the defense that Defendant did not possess the adequate mental state to knowingly and willfully provide, or aid and abet in the provision of material support to ISIS.[2]

7.      In addition to the two Yazidi women, Defendant's now-deceased husband purchased a third Yazidi, a young boy who is now believed to be 10 years old.  This young boy lived with Defendant, her husband, Defendant's children, and the two Yazidi women in Raqqa.  This boy was portrayed in ISIS propaganda videos along with Defendant's oldest son.  Based on discovery tendered to date, the defense anticipates that the government will seek to introduce evidence, including videos and photographs, of Defendant's oldest son being used as an ISIS propaganda tool, which was done at the direction and on the orders of Defendant's husband.  Should the government be permitted to introduce such evidence, then the testimony of this Yazidi boy will be critical to provide additional context to these videos, and to rebut any insinuation that Defendant somehow agreed with their production and willingly participated in their creation.   Indeed, this young boy has been interviewed by the press and has spoken favorably of Defendant and her opposition to these videos.  He has specifically stated that

---

[1] The United Nations has recognized that ISIS perpetrated genocide of Yazidis in Iraq.  This genocide "led to the expulsion, flight and effective exile of the Yazidis from their ancestral lands in Northern Iraq whose women and girls were forced into sexual slavery by the Islamic State and whose men were killed by the thousands." Wikipedia, Genocide of Yazidis by ISIL, available at https://bit.ly/1RVq3Q9 (last visited Aug. 25, 2019).

[2] It must also be kept in mind that this evidence regarding her treatment of the Yazidi children in Raqqa complements the evidence with respect to Defendant's brutal treatment at the ISIS prison camp in Raqqa where the evidence will show that she was tortured and raped by ISIS—odd treatment for someone supposedly having provided material support to them.

Defendant indeed tried to stop the propaganda videos from being made.  *See*, Salma Abdelaziz and Arwa Damon, *Kidnapped boy raised by American ISIS woman in Raqqa* , Jan. 23, 2018, available at https://cnn.it/2ZqgUhZ (last visited Aug. 24, 2019) ("One day, Ayham says, ISIS demanded that the pair appear in a foreign-language propaganda video. Sam tried to stop the group of militants from taking the boys away, but the fighters threatened her and said she had little choice."); CBS News, *Boy says he lived with U.S. family under ISIS rule*, Jan. 22, 2018, available at https://cbsn.ws/2E22ojA (last visited Aug 24, 2019) ("He says the family treated him with kindness. They were forced to make the video by an ISIS gunman, he tells CBS News.").

8. Each of these witnesses is essentially stateless and is beyond the subpoena power of this Court.  None are willing to voluntarily come to the United States to testify at trial; nor would it seem possible for them to be permitted admission to the United States even if they so desired to voluntarily come.  However, through an intermediary, defense counsel have confirmed that at least the two Yazidi women witnesses have indicated that they would be willing to be deposed should the Court grant Defendant's request for depositions.  Additionally, as far as can be determined by the discovery tendered to date, it appears that the government did not interview these witnesses at any time during the course of its investigation.

9. Rule 15 of the Federal Rules of Criminal Procedure permits a party to move that a prospective witness be deposed to preserve the testimony for trial, because of exceptional circumstances and in the interest of justice. F.R.Cr.P. 15(a)(1).  The Seventh Circuit has yet to outline a formalized test for a finding of "exceptional circumstances." *United States v. Knox*, 540 F.3d 708, 717 (7th Cir. 2008). Generally, however, courts have held that exceptional circumstances exist when the prospective witness is unavailable for trial, and the absence of the testimony would result in injustice due to its materiality. *See United States v. Groos*, 616 F.Supp.2d 777, 790 (N.D.Ill. 2008); *United States v. Foster*, 2014 WL 2581174 (N.D.Ill. 2014).

Most circuits rely on some formulation of these general principles. The Eleventh Circuit examines: (1) the materiality of the proposed testimony; (2) the availability of the witness; (3) whether injustice will otherwise result without the material testimony that the deposition could provide; and (4) whether countervailing factors would make the deposition unjust to the nonmoving party. *Knox*, 540 F.3d at 717 (citing *United States v. Thomas*, 62 F.3d 1332, 1340 (11th Cir. 1995)). The Second Circuit requires the party to show: (1) the prospective witness is unavailable for trial; (2) the witness' testimony is material; and, (3) the testimony is necessary to prevent a failure of justice. *United States v. Vilar*, 568 F.Supp.2d 437 (S.D.N.Y. 2008) (*citing United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001); *United States v. Singleton*, 460 F.2d 1148, 1154)(2d Cir. 1972)); *see also United States v. Olafson*, 203 F.3d 560, 567 (9th Cir. 2000) (considering whether the deponent would be available at the proposed location of the deposition, whether the deponent would be willing to testify, and the safety of the United States officials in going to the foreign location).

     5.    A witness is considered unavailable for purposes of Rule 15 "when there is a substantial likelihood that the proposed deponent will not testify at trial." *United States v. Wag-Aero, Inc.*, 888 F.Supp.101 (E.D. Wis. 1995); *see also United States v. Marteau*, 162 F.R.D. 364, 367 (M.D. Fla. 1995) (finding unavailability where eleven witnesses defendant sought to depose were Canadian residents beyond the U.S. subpoena power, and were either hostile or unwilling to travel to the United States to attend the trial); *United States v. Vilar*, 568 F.Supp.2d at 438-439 (finding two witnesses unavailable when the witnesses were foreign nationals who resided in the United Kingdom beyond the court's subpoena power, the government made repeated requests and offered to pay the expenses of travel, and counsel for the witnesses had communicated to the government their final decision to decline to testify at the trial).

6. Testimony is material "if it is highly relevant to a central issue in the case." *Vilar*, 568 F.Supp.2d at 440. Materiality for Rule 15 has also been described as "some showing, beyond unsubstantiated speculation, that the evidence exculpates the defendant." *Knox*, 540 F.3d at 717 (internal citations omitted); *see also Groos*, 616 F.Supp. at 791-92 (declining to decide whether materiality for Rule 15 has the same meaning the Supreme Court gave the term in *Brady v. Maryland*, 373 U.S. 83 (1963)). Yet, courts have also held that to establish materiality, a defendant need not show "that the testimony being sought must surely acquit the defendant." *United States v. Little*, 2014 U.S. Dist. LEXIS 60840, at *3 (S.D.N.Y. Apr. 23, 2014). Rather, the defendant need only show that the testimony is "highly relevant to a central issue in the case." *United States v. Grossman*, 2005 U.S. Dist. LEXIS 3135, at *7 (S.D.N.Y. Mar. 1, 2005) (quoting *United States v. Drogoul*, 1 F.3d 1546, 1556 (11th Cir. 1993)).

7. Counsel expect these witnesses will provide material, non-cumulative testimony, and anticipate that the witnesses will be willing to provide the Court with a more fulsome exposition of their anticipated testimony. However, in discussing this matter with the government attorneys so as to determine whether any agreement was possible, they have indicated a more fundamental relevancy objection to the testimony based upon the very narrow time frames set forth in the indictment which essentially ends the conspiracy to provide material support in Hong Kong, prior to the Defendant, her husband, and his jihadi brother departed from Hong Kong and ultimately to Syria. As the Court is aware from the detention hearing and other hearings, undersigned counsel could not be more adamant that the government cannot so limit the evidence, especially insofar as it affects evidence of Defendant's state of mind at the time of the offense charged. However, rather than belabor the intricacies of Rule 15, the parties are in agreement that this threshold issue should be resolved by the Court first, as it affects not only this

7

Rule 15 foreign deposition question, but several other similar evidentiary issues that defense counsel are pursuing in the course of their investigation and pre-trial preparation.

10. Accordingly, counsel respectfully ask this Court to resolve this initial evidentiary dispute; and then permit the parties to further brief or orally argue the applicability of Rule 15.

Respectfully submitted,

/s/ Thomas Anthony Durkin
**THOMAS ANTHONY DURKIN,**

/s/Joshua G. Herman
**JOSHUA G. HERMAN**
Attorneys for Defendant
Samantha Elhassani

**DURKIN & ROBERTS**
515 W. Arlington Place
Chicago, IL 60614
(312) 913-9300
tdurkin@durkinroberts.com

**LAW OFFICE OF JOSHUA G. HERMAN**
53 W. Jackson Blvd., Suite 457
Chicago, IL 60614
(312) 909-0434
jherman@joshhermanlaw.com

8

## CERTIFICATE OF SERVICE

Joshua G. Herman, Attorney at Law, hereby certifies that the foregoing Defendant's Motion to Depose Witnesses in Iraq Pursuant to Rule 15 of the Federal Rules of Criminal Procedure was served on August 25, 2019 through the Clerk of the United States District Court for the Northern District of Indiana using the CM/ECF system.

/s/Joshua G. Herman
**JOSHUA G. HERMAN**

**LAW OFFICE OF JOSHUA G. HERMAN**
53 W. Jackson Blvd., Suite 457
Chicago, IL 60614
(312) 909-0434
jherman@joshhermanlaw.com