UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 2:18-cr-33 PPS/JEM |
| v. | ) | |
| | ) | |
| SAMANTHA ELHASSANI | ) | |

## GOVERNMENT'S FIRST MOTION *IN LIMINE* TO EXCLUDE EVIDENCE

The United States of America, by Thomas L. Kirsch II, United States Attorney for the Northern District of Indiana, and the undersigned Assistant United States Attorneys, submits this pre-trial motion *in limine* to exclude testimony and evidence of immaterial facts occurring after the dates charged in the Superseding Indictment pursuant to Federal Rules of Evidence 401 and 403. By filing this motion, the government seeks to exclude irrelevant, extraneous or unduly prejudicial arguments and evidence, focus the trial on the issues that must be resolved by the jury, and expedite this Court's determination of anticipated legal disputes likely to arise during trial.

## The Charges

Defendant was indicted for conspiring with, and aiding and abetting, her husband Moussa Elhassani and brother-in-law Abdelhadi Elhassani to provide material support to ISIS, in violation of 18 U.S.C. § 2339B. DE 23. Count One charges Defendant with a conspiracy beginning in November 2014, when Defendant first became aware that Moussa wanted to join ISIS, and ends in the summer of 2015,

when Defendant and her family entered ISIS-controlled territory in Syria.[1] Count One alleges that Defendant conspired with Moussa and Abdelhadi to provide material support and resources for ISIS. They conspired to, among other things, provide tactical gear, transport gold and precious metals abroad, travel to Turkey and Hong Kong for logistical preparations, and deceive family, friends, community members and federal law enforcement regarding their plans. Count Two concerns Defendant's actions in Hong Kong between March 23, 2015 until on or about April 7, 2015, when she retrieved funds and precious metals and acquired tactical gear, namely rifle scopes and image-stabilized binoculars to be used for the benefit of ISIS. The government has only charged Defendant with her actions before she entered Syria; it has not charged her with any of her actions in Syria. In other words, the government could prove its case even if Defendant never crossed the border into ISIS territory.

To establish the conspiracy violation in Count One, the government must prove: (1) the conspiracy as charged existed; and (2) Defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy. 7th Cir. Pattern Instr. 5.08(B); *see also, e.g., United States v. Farhane*, 634 F.3d 127, 144 (2d Cir. 2011) (elements of § 2339B conspiracy). The elements of proof for Count Two, the substantive violation of 18 U.S.C. § 2339B, are: (1) Defendant knowingly provided material support or resources to a foreign terrorist organization; (2) Defendant knew that the organization was a designated foreign terrorist organization, or that the

---

[1]    The evidence indicates that Defendant and her family first entered ISIS-controlled territory in Syria as early as April 2015 and as late as June 2015.

organization had engaged or was engaged in terrorist activity or terrorism; and (3) the jurisdictional requirement has been met (in this case, that Defendant is a U.S. citizen). *United States v. Wright*, 937 F.3d 8, 23 (1st Cir. 2019); *see also United States v. Dhirane*, 896 F.3d 295, 303 (4th Cir. 2018).

Defendant is not charged with engaging in acts of terrorism or being a member or an ideological supporter of ISIS. The government does not need to prove she was a terrorist or even agreed with ISIS's political or religious goals; she can be found guilty of providing material support even if her motives are non-ideological. *See, e.g., Holder v. Humanitarian Law Project*, 561 U.S. 1, 16-17 (2010); *United States v. Mehanna*, 735 F.3d 32, 42 (1st Cir. 2013) ("A specific intent to advance the organization's terrorist activities is not essential."); *United States v. Al Kassar*, 660 F.3d 108, 129-30 (2d Cir. 2011) (section 2339B "does not require the government to show that a defendant who supported a terrorist organization … intended to aid its specifically terrorist aims"). It is sufficient for Count One that Defendant knew about Moussa's and Abdelhadi's plans to join ISIS and intended to help them and, for Count Two, that Defendant knew ISIS was engaged in terrorist activity when she provided such assistance.

## Argument

Events that occurred in Syria have no bearing on Defendant's innocence or guilt if they do not explain her actions or applicable *mens rea* during the time she prepared to and ultimately crossed the border.  The government does not seek to draw a bright line and exclude evidence of all facts occurring in Syria.  However, only those

3

events that occurred in Syria that can explain Defendant's actions or *mens rea* before she entered Syria should be admitted.

There are some limited facts in Syria that explain Defendant's actions before she and her family entered Syria that, in fact, should be admitted. For example, the fact that Moussa and Abdelhadi actually joined ISIS after they entered Syria is evidence of the goal of the conspiracy charged in Count One. Defendant's admissions that she and her husband stored gold in Syria corroborates that she procured and transported gold from the United States via Hong Kong in order to advance the goals of the conspiracy. Additionally, an ISIS propaganda video that was filmed in Syria and released in 2017 features Defendant's son with an imaged-stabilized binocular that is the same make and model as the one purchased by Defendant in Hong Kong on or about March 31, 2015. The government intends to show a comparison to prove that the item was intended to be used—and was used—for the benefit of ISIS. However, just because some evidence after Defendant crosses the border has relevance to this case does not mean that all evidence after she crosses the border is admissible.

Below are examples of alleged facts in Syria that the defense has referenced in this case and/or in public statements and may attempt to admit at trial, but should be excluded on relevance grounds. *See* Fed. R. Evid. 401. None of the issues below are probative to the elements of the crimes charged or any applicable defense. If Defendant is permitted to present these facts, they will confuse, distract and mislead the jury as to the issues it must decide, constitute a plea to sympathy rather than a

decision on the admissible evidence, open the door to more irrelevant evidence, and unnecessarily delay the trial. *See* Fed. R. Evid. 403.

Because the Court's ruling on this motion will substantially impact the scope of witness testimony and evidence, as well as the projected length of the trial, a pretrial determination on the admissibility of the following evidence will allow the parties to prepare and streamline their trial presentations.

**1.     Evidence of Defendant's Alleged Abuse and Torture by ISIS Members in Syria Is Irrelevant and Unfairly Prejudicial.**

Defendant has made many statements about her time in Syria to journalists, federal agents, friends, and family. While housed in a camp controlled by Kurdish coalition forces after her husband died and she left ISIS territory, she penned a memoir about the events preceding and during her time in Syria, which she entitled "The Truth." There, Defendant claims that approximately six months after her family entered Syria, ISIS police stormed her house, arrested her and her husband Moussa, and transported them to a prison. Defendant states that, while in prison, she was accused of being a spy, beaten and tortured for several weeks, and then she and her husband were released without explanation.[2] According to Defendant, she was pregnant with her third child at the time.

---

[2]     The government is not aware of any potential witness (other than Defendant) who can corroborate these allegations.  Defendant has told this story to several people, but unless they have actual personal knowledge of the prison incidents, Defendant cannot admit her statements through other witnesses. Fed. R. Evid. 801(d)(2); *Stock v. Rednour*, 621 F.3d 644, 649 (7th Cir. 2010) (discussing "the basic evidentiary principal that self-serving, out-of-court statements are inadmissible for the purpose of exculpating the declarant"); *United States v. Yousef*, 327 F.3d 56, 153 (2d Cir. 2003) ("[W]hile the Government was free to introduce the statement as an admission by a party-opponent . . . [the defendant] had no right to introduce it on his own.").

This is irrelevant to the charges. The fact that Defendant and her husband were imprisoned and tortured in or around December 2015 does not make it more or less probable that she transported gold to Hong Kong, helped procure tactical gear, and helped Moussa and Abdelhadi join ISIS six to twelve months earlier. The relevant inquiry is the Defendant's state of mind before she entered Syria, not what ISIS might or might not have thought of her six months after she crossed the border.

The alleged torture occurred after Defendant committed her crimes and therefore cannot be used to explain her previous actions. Moreover, it is irrelevant whether ISIS police believed Defendant was a spy. A defendant can be guilty of providing material support to a terrorist organization even if she is not a member of the organization or the organization does not accept her support. *Mehanna*, 735 F.3d at 45 (affirming conviction when Defendant traveled abroad to join training camp that "no longer existed"); *Dhirane*, 896 F.3d at 303 ("[D]etermining that [individuals], to whom monies were transmitted, were part of [terrorist organization] was not necessary to finding that the defendants had provided or attempted to provide material support to" terrorist organization). Grizzly details about Defendant's torture in ISIS prison serve no purpose other than to gain sympathy from, and seek nullification from, the jury. Were ISIS's opinion of the Defendant relevant, then presumably the terrorist organization's decision to use her son in a propaganda video would make it more probable that they accepted the Elhassani family as believers. But that argument is no more tenable than an argument that ISIS's actions towards Defendant shed light on her state of mind before crossing the border.

2.    **Evidence of Alleged Domestic Abuse in Syria is Irrelevant and Unfairly Prejudicial.**

Since being charged with material support of terrorism crimes, Defendant has asserted that she only went to Syria and engaged in pre-planning activities in the United States and abroad because she was bullied and coerced by her abusive husband. Defendant never made these assertions when she was interviewed by federal agents and the media in the Kurdish camp, just months before she was charged, despite having every incentive to do so.

In her diary "The Truth" and in media interviews before being charged, Defendant explained that Moussa was a different person before and after they came to Syria. Defendant described Moussa, before Syria, as a loving, romantic, doting husband, who showered her with expensive gifts and treated her son as his own. Defendant explained that she knew how to manipulate her husband to get what she wanted. She also explained that they had marital problems, including substance abuse, infidelity, and Moussa's citizenship issues; but despite these issues, they were very much in love. According to Defendant, Moussa's behavior changed months after they entered Syria, when Moussa returned from ISIS training camp. Defendant stated Moussa "began beating and verbal abuse with me and both the children." Defendant described her husband's change in personality as shocking: "This was not my sweet, romantic, cooky husband. This was someone I didn't know."

Based on Defendant's statements to the media, the government anticipates that she will try to argue that her actions were the result of alleged abuse by Moussa and she did not intend to provide material support. That argument is problematic

because the Seventh Circuit has held that a defense based on the inability to form the requisite intent to commit a crime should be "extremely limited" because of its potential to confuse the jury. *United States v. Ricketts*, 146 F.3d 492, 498 (7th Cir. 1998). Even that argument, however, would not help Defendant in Count Two, which has a knowing *mens rea*, rather than specific intent, and is therefore not subject to a diminished intent argument. *See, e.g., United States v. Weis*, 891 F. Supp. 2d 1007, 1013 (N.D. Ill. 2012) (diminished intent applies only to "specific intent crimes"). Thought of another way, someone might not intend to take actions because they are being forced to do so, but that individual cannot legitimately claim they did not know they were taking those actions.

Rather, an abuse argument is more appropriately considered under the coercion/duress line of case law, but only if Defendant can show abuse during the crime. *United States v. Madoch*, 149 F.3d 596, 599-600 (7th Cir. 1998). That argument would require the Defendant to make a sufficient evidentiary showing of coercion/duress and prove that defense to the jury by a preponderance of the evidence. *See, e.g,* 7th Cir. Pattern Jury Instruction No. 4.03 (citing *Dixon v. United States*, 548 U.S. 1 (2006)); Pattern Instruction 6.08). She cannot meet that threshold by showing that Moussa abused her months after they crossed the border into Syria since the defense is only applicable to a defendant who "had no reasonable opportunity to refuse to commit the offense"—not a Defendant who was abused after the crime was over, in this case, after she crossed the border.  7th Cir. Pattern Instruction No. 6.08.

Thus, any evidence that Moussa abused Defendant after crossing the border does not aid that defense. If Defendant can present admissible, first-hand evidence that Moussa abused her before they crossed the border, that evidence might be relevant towards a coercion defense. But if Defendant has no evidence that Moussa was abusive to her before she helped him join ISIS, then her defense is invalid. Evidence that she was abused and mistreated by her husband in Syria may be relevant at sentencing, but during trial, it would amount to jury nullification. *See, e.g., United States v. Dunkin*, 438 F.3d 778, 780 (7th Cir. 2006) ("A defense," like coercion, "should not be submitted to the jury, even in a criminal case, if there is no credible evidence to support it.").

### 3.   Evidence Relating to Defendant's Yazidi Slaves Is Irrelevant and Unduly Prejudicial.

On August 25, 2019, Defendant filed an unopposed motion to take Rule 15 depositions of three Yazidi slaves that she and her husband bought and owned in Syria, which was granted by the Court. DE 79, 84. In her motion, Defendant anticipated the Yazidis would testify about how Defendant protected them from Moussa and how Defendant helped them escape from ISIS territory in the fall of 2017. DE 79, Def. Mot. ¶ 5.

None of these facts are relevant to whether Defendant is guilty or innocent of helping Moussa and Abdelhadi provide material support to ISIS before she entered Syria. By her own account, Defendant did not meet the Yazidis until mid-2016, approximately one year after she entered Syria and months after she allegedly spent time in ISIS prison. Moreover, the fact that Defendant fled Raqqa in or around

November 2017, after her husband was dead and it became clear that ISIS was losing its territorial control in Syria, will not assist the jury in evaluating her actions and mental state over two years earlier, during the date range of the charges.

If the Court allows Defendant to portray herself as a hero to the Yazidis, the Court should also allow evidence of her role in their abduction and slavery. For example, in "The Truth," Defendant admits that she purchased the first Yazidi slave, a teenage girl, for $10,000 with her own money, knowing at the time of the purchase that her husband wanted Yazidi slaves for the purpose of bearing his children. In an interview with a journalist, Defendant explained that she would prepare the girls by having them shower and put on nice clothes before Moussa raped them. *See* Shane Bauer, *Betrayal. Torture. Escape. An American Woman Inside the Islamic State.* Mother Jones (June 26, 2019), https://www.motherjones.com/politics/2019/06/betrayal-torture-escape-an-american-woman-inside-the-islamic-state.

Defendant further contends that the Yazidis will testify that Defendant did not support ISIS during the time they knew her and that she opposed the ISIS propaganda video featuring Defendant's son and one of her Yazidi slaves. Defendant is not charged with providing her son as personnel for ISIS or for subjecting him to be filmed in a propaganda video. If the Court grants this motion, the government does not intend to offer as evidence the propaganda video (other than still shots, as described above) or other homemade videos that she was involved in featuring her son handling assault rifles and a suicide belt and discussing martyrdom. But, if the Court permits Defendant to admit evidence that she did not support ISIS and its

policies while living in Syria, the government should be allowed to submit contrary evidence indicating Defendant intended for her son to become involved with ISIS and facilitated his participation in ISIS activities. Ultimately, though, such evidence should be excluded as irrelevant to her mental state before crossing the border and problematic under Rule 403. Presentation of these competing facts will steer the trial far off course, resulting in inevitable delay and confusion of the issues.

## Conclusion

These are examples of the types of events that may have occurred in Syria after Defendant's crimes that should be excluded from trial.  There may be other alleged events that also qualify.  The government's motion may not be exhaustive as to these events, but a pre-trial ruling on the admissibility of the events described herein will clarify the issues to be presented to the jury. Because events like those described above do not explain Defendant's actions or the applicable *mens rea* during the time of her crimes (before she crossed the border into Syria), evidence of such events should be excluded.

WHEREFORE, the Court should grant the government's motion.

Respectfully submitted,

THOMAS L. KIRSCH II
UNITED STATES ATTORNEY

BY:   /s/ *Abizer Zanzi*
Abizer Zanzi
Jennifer Chang
Nathaniel Whalen
Assistant United States Attorneys
5400 Federal Plaza, Suite 1500
Hammond, Indiana  46320

Tel:    (219) 937-5500
Fax:    (219) 852-2770
E-mail:  Abizer.Zanzi@usdoj.gov