UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 2:18-cr-33 PPS/JEM |
| v. | ) | |
| | ) | |
| SAMANTHA ELHASSANI | ) | |

### GOVERNMENT'S EXPERT NOTICE

The United States of America, by Thomas L. Kirsch II, United States Attorney for the Northern District of Indiana, and the undersigned Assistant United States Attorneys, submit this notice under Federal Rule of Criminal Procedure 16(a)(1)(G) regarding its intention to present the expert testimony of Dr. Lorenzo Vidino.

**I.     LEGAL STANDARD**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which requires, as relevant here, that (a) the expert's specialized knowledge help the trier of fact understand the evidence or determine a fact at issue; (b) the testimony is based on sufficient facts and data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In assessing whether the Rule 702 qualifications have been met, this Court can look at a non-exhaustive list of factors set forth in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993), including: whether the expert's technique has been tested or is testable; if his opinion is subject to peer review and publication; is there a known or potential rate of error; do controls exist or were they

1

maintained; and whether the technique or theory is generally accepted in the scientific community. *See United States v. Lewisbey*, 843 F.3d 653, 659 (7th Cir. 2016). The Advisory Committee Notes to Rule 702 also suggest the Court consider: whether the expert is proposing to testify about matters growing directly out of research independent of the litigation, or whether they have developed their opinions expressly for the purpose of testifying; whether the expert's opinion is based on an "analytical gap between the data and opinion proffered"; whether the expert has accounted for other obvious alternative explanations; whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting; and whether his field is known to reach reliable results. 2000 Advisory Committee Notes to Fed. R. Evid. 702.

The standards under Rule 702 and *Daubert* should be applied in a "flexible" manner to "nonscientific evidence" and the "specific [*Daubert*] factors neither necessarily nor exclusively apply to all experts or in every case." *United States v. Romero*, 189 F.3d 576, 584 (7th Cir. 1999) (citing *Kumho Tire Co. v. Carmichael* 526 U.S. 137 (1999)). This Court enjoys "broad latitude" when deciding how to "determine reliability" of the expert's testimony. *Id.*

## II.   DR. VIDINO'S EXPERIENCE AND BACKGROUND

Dr. Lorenzo Vidino's curriculum vitae, attached as Exhibit 1, demonstrates his expertise in the field of terrorism, specifically as it relates to ISIS. He is an Italian law school graduate with a Masters Degree in international relations with a focus on security, and a Ph.D in international relations with a focus on the Middle East and

2

security. He also has, as described in more detail below, roughly 20 years' experience studying, researching, and training in the field of terrorism.

Dr. Vidino has been the Director of the Program on Extremism at George Washington University since 2015. The Program on Extremism's mission is to "provide[] analysis on issues related to violent and non-violent extremism. The Program spearheads innovative and thoughtful academic inquiry, producing empirical work that strengthens extremism research as a distinct field of study. The Program aims to develop pragmatic policy solutions that resonate with policymakers, civic leaders, and the general public." *See* https://extremism.gwu.edu/about.

Dr. Vidino was the Head of the Radicalization and International Terrorism Program at the Institute for International Political Studies (ISPI) in Milan, from June 2017 to April 2019. ISPI's program "focuses on the empirical analysis of violent and non-violent extremism in Europe and the world, with a particular emphasis on jihadist ideology." https://www.ispionline.it/en/ricerca/radicalizzazione-e-terrorismo-internazionale.

Dr. Vidino's research methods involve reviewing, analyzing, and processing as many documents as possible on more than 200 cases relating to terrorism in the United States. He and his team also review social media sites to track ISIS recruiting and practices. They interview individuals, both in the United States and abroad, who have direct connections to ISIS. That includes former ISIS members, ISIS family members, law enforcement investigating such cases, defense attorneys who represented charged terrorists, and journalists who have reported on ISIS activity.

Dr. Vidino has provided expert testimony in several federal trials involving material support to foreign terrorist organizations. *See, e.g., United States v. Rakhmatov,* No. 2014-cr-1413 (E.D.N.Y. 2019); *United States v. Rahim*, No. 3:17-cr-169 (N.D. Tex. 2019); *United States v. Alebbini*, No. 3:17-cr-71 (S.D. Ohio 2018); *United States v. Shafi*, No. 15-cr-582 (N.D. Cal. 2018); *United States v. Kareem*, 15-cr-707, Trial Trans. March 9, 2016, Docket No. 365 (D. Ariz.); *United States v. Al Farekh*, 15-cr-266, Trial Trans., September 20, 2017, Docket No. 168 (E.D.N.Y.); *United States v. Hendricks*, No. 1:16-cr-265, Trial Trans. March 9, 2018 (N.D. Ohio). He has also testified on numerous occasions on terrorism-related issues before the U.S. Congress, as well as the Italian Parliament, the Danish Parliament, and the Canadian Parliament.

Dr. Vidino has written multiple books—*Home-Grown Jihadism in Italy: Birth, Development and Radicalization Dynamics* and *The New Muslim Brotherhood in the West; Al Qaeda in Europe: The New Battleground of International Jihad*—and chapters in others, including "Radicalisation and counter-terrorism in the era of the Islamic State's metamorphosis," "European jihadists in Syria: profiles, travel patterns and governmental responses," "Homegrown jihadist terrorism in the United States: A new and occasional phenomenon?" "Islamist Terrorism: Assessing Threats to Democracy." He has published reports on terrorism, as well, including "Fear Thy Neighbor: Radicalization and Jihadist Attacks in the West," "ISIS in America: From Retweets to Raqqa," "Countering Violent Extremism in America." He has also written numerous peer-reviewed articles.

4

### III. ANTICIPATED EXPERT TESTIMONY

Dr. Vidino will testify based on information he has learned through his research and interviews of individuals who either fled to ISIS-controlled Syria, attempted to do the same, or were somehow involved in cases involving such individuals. The government does not intend for Dr. Vidino to testify about Defendant specifically or provide any opinions about Defendant or her conduct. In other words, the government will not provide Dr. Vidino any non-public discovery or exhibits to review or statements by the Defendant for the purpose of having him to testify about Defendant's charged conduct. Instead, the government will direct Dr. Vidino to facts that the government will establish through lay witnesses during its case-in-chief (*e.g.*, directing Dr. Vidino to the particular location at the Turkey-Syria border where Defendant is believed to have crossed into ISIS territory and asking him about the travel conditions to that location in the summer of 2015 based on available research). If the government shows Dr. Vidino any exhibits, it will be to elicit questions about his knowledge and research on ISIS (*e.g.,* the government may show Dr. Vidino a copy of Defendant's husband's and brother-in-law's ISIS enrollment/intake forms to establish that they confirm with ISIS's known documentation practices for its members). In sum, Dr. Vidino's testimony will focus on the relevant research he has conducted and the knowledge he has acquired separate from this litigation.

Dr. Vidino will provide general background about the origins of ISIS as well as its ideology and political goals, especially and including its declaration of a Caliphate in 2014, around the same time Defendant asserts her husband began discussing

5

joining ISIS. This brief overview is intended to educate the jury about ISIS and explain why it is a designated terrorist organization. *See United States v. Farhane*, 634 F.3d 127, 158 - 60 (2d Cir. 2011) (upholding admission of expert testimony regarding al-Qaeda's origins, history, structure, leadership, instructional methods, operational logistics, acts of terrorism, and radical Islamic ideology); *United States v. Benkahla*, 530 F.3d 300, 308-10 (4th Cir. 2008) (affirming decision to admit expert testimony regarding "background information on radical Islam and jihad generally rather than discussing [Defendant] individually"); *United States v. Hammoud*, 381 F.3d 316, 337-38 (4th Cir. 2004) (affirming admission of expert testimony regarding "structure of [terrorist organization] and…its leaders"); *cf. United States v. Mansoori*, 304 F.3d 635, 652-54 (7th Cir. 2002) (affirming admission of expert testimony "regarding the history, leadership, and operations of the" drug gang).

Dr. Vidino will testify about mainstream media coverage of ISIS and its rise in notoriety as one of the premier Islamist foreign terrorist organizations in 2014 and 2015, during the time period of the charged conduct in this case. While the government does not intend to elicit the graphic details of these events, Dr. Vidino will explain that ISIS drew widespread international attention by beheading individuals and committing other public acts of terrorism during the time that Defendant helped her husband and brother-in-law join the organization. Defendant has asserted that she did not understand how volatile the ISIS-controlled region was at the time she crossed the border. Dr. Vidino's testimony will help the jury assess the plausibility of that statement. *See, e.g., United States v. Farhane*, 634 F.3d 127,

160 (2d Cir. 2011) (affirming admission of expert testimony regarding terrorist organization activities to help jury determine "whether it could be reasonably inferred that a person such as" Defendant "would know that he was providing support to an organization that engaged in terrorism").

Dr. Vidino will testify that individuals traveled to Syria for reasons other than religious and political ideologies. *See, e.g.,* L. Vidino and S. Hughes, *ISIS in America: From Retweets to Raqqa*, GWU Program on Extremism (Dec. 2015), https://extremism.gwu.edu/isis-america. Dr. Vidino will also testify about the manner in which ISIS recruited individuals from the United States. *Cf. United States v. Jayyousi*, 657 F.3d 1085, 1104-05 (11th Cir. 2011) (noting expert "testified as to secrecy of training camps, and the requirement that a recruit, particularly an American Muslim, receive a recommendation from a reliable brother to attend the camp"). It is expected that Defendant will claim she has never practiced Islam or adopted ISIS ideology. Dr. Vidino will explain that there is no religious or ideological litmus test to join ISIS. Instead, Dr. Vidino's research reflects that Americans and Europeans have commonly traveled to Syria to join ISIS for non-ideological and non-religious reasons, including a desire for meaning and purpose, thrill seeking and to escape personal challenges such as addiction or unemployment. Dr. Vidino has studied ISIS online propaganda and will explain how the organization has used a variety of marketing techniques to attract potential recruits, including non-Muslims, based on a variety of motivations.

Dr. Vidino will testify about the important role that women play in ISIS, including maintaining stability in the home while their husbands were on the front line, mothering children who will ultimately support ISIS, financing the organization, preparing soldiers for battle, and participating in propaganda. Dr. Vidino's testimony will provide the jury with an understanding that women could help support ISIS without actually fighting. His testimony will dispel the misconception that wives of ISIS fighters were uniformly abused or treated as second-class citizens, but instead served an important role and status in ISIS society. This testimony is relevant to explain why females have voluntarily traveled to Syria to live in ISIS territory from the United States and other Western countries.

Dr. Vidino will testify about the means, methods and paths that prospective ISIS members and their families used to travel to Syria from the United States. He will testify that members of the ISIS community shared travel tips and best practices for traveling to Syria via online forums. Dr. Vidino will explain how recruits used counter-surveillance techniques such as purchasing plane tickets with misdirected connections and travel paths, as well as purchasing tickets as decoys that were never used. ISIS travelers from the United States and Western countries typically concealed their plans from family and friends. Such testimony that individuals fleeing to ISIS-controlled Syria used "counter-surveillance techniques" to "avoid detection" is an appropriate manner of expert testimony. *United States v. Romero*, 189 F.3d 576, 584-85 (7th Cir. 1999) (collecting cases); *United States v. Love*, 336 F.3d 643, 646-47 (7th Cir. 2003) (finding expert testified within scope of notice regarding

"security measures that are common" in drug dealing conspiracies, including "the use of third parties for security and concealment purposes").

Dr. Vidino will also testify about the foresight and planning that was required to travel to ISIS-controlled Syria, particularly in and around the summer of 2015. He will describe the process of crossing the border from other countries into ISIS-controlled Syria, including the existence of checkpoints and assistance by ISIS members and smugglers. Among other things, Dr. Vidino will explain that recruits were encouraged to bring items such as rifle scopes, binoculars and other tactical gear that were not available for purchase within ISIS territory. Dr. Vidino will also explain the desirability of gold and precious metals as a source of wealth and currency inside the Caliphate. This testimony is relevant to show how Defendant's planning and assistance facilitated her husband and brother-in-laws plans to travel to Syria, and how her and her co-conspirators actions were deliberate, careful and consistent with practices used and recommended by ISIS travelers at that time.

## REQUEST FOR RECIPROCAL DISCOVERY

Pursuant to Rule 16(b)(1)(C), the Government respectfully requests reciprocal discovery in the form of a summary of any possible expert testimony to be elicited or given by defense witnesses at trial.

        Respectfully submitted,

        THOMAS L. KIRSCH II
        UNITED STATES ATTORNEY

BY:    /s/ *Abizer Zanzi*
        Abizer Zanzi
        Jennifer Chang
        Nathaniel Whalen
        Assistant United States Attorneys
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana  46320
        Tel:   (219) 937-5500
        Fax:  (219) 852-2770
        E-mail:  Abizer.Zanzi@usdoj.gov